## PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. JOSÉ GONZÁLEZ MARTÍNEZ, Defendant and Appellant.

No. 7362. Argued January 27, 1939.—Decided February 10, 1939.

*E. Martínez Avilés* for appellant. *R. A. Gómez, Prosecuting Attorney* and *Luis Janer,* Assistant *Prosecuting Attorney,* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

The first assignment raises a jurisdictional question. The contention is that the evidence failed to show that the crime was committed in the ward Domingo Ruiz of Arecibo, as charged in the information.

Lino Quiñones, the victim of a murderous assault, was taken in a dying condition immediately after the assault to the municipal hospital in Arecibo where he was identified by a policeman and attended by the hospital surgeon.

Felícita López, wife of Quiñones, lived in Bajadero, Arecibo. Quiñones was called from his bed at midnight and assaulted when he stepped outside the door of the house in which he and his wife, Felícita, lived. Bajadero was "un poblado de Arecibo."

Juan González lived in Bajadero, a few yards from the scene of the crime. A policeman arrived within five minutes after the assault. The crime was committed at a place called

Buena Vista, some eight or ten yards from the "poblado". The house of Juan González was about fifteen yards from the house of the defendant, José González, which was quite close to the Quiñones house.

Antonio Nadal lived in Bajadero near the house of Lino Quiñones and while in bed heard Carmelo Irizarry, a co-defendant, call Quiñones.

Rita Nadal, another witness, also lived in Bajadero, so near the scene of the crime that she could see from her door-way most of what occurred.

Emigdio Sánchez, a school teacher, knew José González and Lino Quiñones in the ward of Bajadero, where witness lived. This witness, while in bed, heard the cries of women, put on his pants and coat, ran toward the scene of the crime where he arrived together with the policeman, Padilla, within five minutes after he heard the cries. Some minutes later he found a conveyance in which Quiñones was taken to town.

Padilla, the policeman, was on duty in Bajadero, ward Domingo Ruiz. About midnight, while in the *poblado* of Bajadero, he heard cries for a policeman. "It was Esteban Quiñones," son of Lino Quiñones, who told witness to run to the place—"*que corriera allá*"—and witness went. Witness took up the wounded man and turned him over to others who took him "to town". Witness then arrested José González and Carmelo Irizarry and brought them to Arecibo by way of Cambalache. Witness turned over to the district-attorney a *machete* which he said José González had delivered to him as the weapon with which González had assaulted Quiñones.

From the testimony of Irizarry as a witness for the defense, it appears that Irizarry, shortly after the commission of the crime and during the same night, made a statement before the district-attorney of Arecibo, who later filed the information.

Apparently, by accident rather than by design, the fact that the crime had been committed at or in the immediate

vicinity of a place known as Bajadero—a cluster of houses in the municipality of Arecibo—was fairly well established. That the municipality of Arecibo is within the judicial district of Arecibo is a matter of judicial knowledge. *People* v. *Llauger*, 14 P.R.R. 534; *People* v. *Suro*, 47 P.R.R. ——, and *People* v. *Suárez*, 51 P.R.R.——.

Although the evidence for the prosecution might have fixed with greater precision the place where the crime had been committed, we are not prepared to say that the judgment of the district court should be reversed for want of evidence sufficient to show that the crime had been committed within the territorial limits of the judicial district.

The second assignment is that the district court erred and abused its discretion in overruling a motion for a bill of particulars without giving defendant an opportunity to be heard.

The information charged that Carmelo Irizarry Picón and José González Martínez attacked Lino Quiñones with a dagger and a *machete,* inflicting upon him various wounds of a serious character which caused his death. González moved for a bill of particulars:

(*a*) as to which of the defendants used a dagger;

(*b*) as to the number of wounds inflicted and the nature thereof;

(*c*) as to which of the wounds caused the death of Quiñones;

(*d*) as to whether the wounds which caused his death were dagger wounds or *machete* wounds.

As heretofore pointed out, this Court cannot sanction the practice of denying a motion of this kind without a hearing. *People* v. *Ramírez*, 50 P.R.R. ——. It may be conceded without holding, that defendant was entitled to some, if not all, of the information requested.

The theory of the defense was that González took no part in the murder. No objection was interposed to any part of the testimony which tended to show that he wielded the *machete* while Irizarry used a dagger, and that the *machete* wounds were the principal cause of death. There was no

suggestion of surprise at any time during the course of the trial. The testimony of the policeman that González himself delivered the *machete* as the weapon employed by him, was uncontradicted, save in so far as the evidence for the defense tended to show that González was not an assailant. With the possible exception of some cross-examination of a physician as to the nature of the various wounds, as to which of those wounds caused the death of Quiñones and as to the manner in which the wounds might have been inflicted, or the different weapons with which they might have been inflicted,—and save in so far as the evidence for the defense tended to support the theory of the defense—no question was raised at any time during the trial as to whether death resulted from the dagger wounds, or from the *machete* wounds, or as to which of the defendants used the dagger and which the *machete*.

We are not prepared to say that the error, if any, in overruling defendant's motion for a bill of particulars, without a hearing, is a sufficient ground for reversal.

The judgment appealed from must be affirmed.